Troy Cheair SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

Evander Frierson SMITH, Appellant,

v.

UNITED STATES of America,
Appellee.

Nos. 12528, 12529.

United States Court of Appeals
Sixth Circuit.

March 5, 1956.

C. P. J. Mooney, Memphis, Tenn. (Carlton N. Wilkes, James T. Haynes, Memphis, Tenn., on the brief), for appellants.

Robert E. Joyner, Memphis, Tenn. (Warren Olney, III, Washington, D. C., Millsaps Fitzhugh, Edward N. Vaden, Memphis, Tenn., on the brief), for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is an appeal from a judgment and a sentence entered on a jury verdict against defendants under an indictment charging violation of Title 18, U.S.C., Section 1010, for knowingly making false statements in applications for Federal Housing Administration loans. The indictment contained two counts; one count charged Troy Smith with violation of Title 18, U.S.C., Section 1010, the other count charged Troy Smith jointly with his brother, Evander Smith, with violation of the same statute.[1] The first count was based upon an application for a loan of $1,200 made by Troy Smith on August 14, 1952, the second count upon an application for a loan of $1,650 made by Troy Smith December 30, 1952. The statement made in each application charged to be false was that the loan was sought for the purpose of improving a house belonging to Troy Smith in Memphis, Tennessee. The application of August 14, 1952, stated that the proceeds of the loan would be used upon this property through improvements consisting of an "Addition of one room" and "Attic Fan," the estimated cost of which was given as $1,200. On the application for the loan of December 30, 1952, the improvement covered by the application was described as "Build Garage & HWH" (hot water heater), the estimated cost to be $1,650.

The jury found Troy Smith guilty on both counts and Evander Smith guilty on the second count.

The defendants contend that a motion for acquittal should have been granted, that reversible error existed in the charge of the court and in the instructions to the jury made in connection with the jury's request for additional instructions.

1. The parties will be denominated as in the trial court.

Troy Smith had purchased a bunga- low on South Wellington Street in Mem- phis under the benefit of the FHA Title I Credit Plan. He and his wife were employed at the Firestone plant in Mem- phis. His testimony in general is not disputed. Troy Smith had incurred various loans prior to the period in- volved and had promptly taken care of his payments. He, his wife, his mother, and two children lived in the inadequate house. In April, 1952, Troy Smith bor- rowed $370 from the Rubber Workers' Federal Credit Union and employed his next door neighbor, a carpenter, to change an open porch into a bedroom. To make this usable a large attic fan was installed and ducts were built through the house. Most of this work had been completed before August 14, 1952, when Troy Smith applied for an FHA loan of $1,200.

He negotiated the loan through Mr. Mosteller, head of the FHA department of the Commercial & Industrial Bank in Memphis. Troy Smith testified that Mosteller informed him he could borrow money for improvements already com- pleted. This testimony is undisputed. A unit manager of the Commercial & National Bank with which Mosteller was connected testified that Mosteller had instructed those under him in the FHA department "to make as many loans as possible, and if the applicant stated that the improvements were to be used for something that was not con- sidered eligible for FHA loans, that we were to refer them to Mr. Mosteller himself, or Mr. Jimmy Cooper, who was his assistant, in the absence of Mr. Mosteller, and as they knew how to handle these particular cases * * *." During this period FHA loans yielded 5½% while the banks were lending money for 6% and the FHA loans were substantially insured by the FHA, the borrower paying for the insurance.

When Troy Smith executed the ap- plication of August 14, 1952, he filled in the details that Mosteller told him to insert. At that time Mosteller told Troy Smith "You had better get enough

the first time because you can't get an- other loan to build your room with." The application was referred by Mostel- ler to the United Service and Research Company, which, after securing a his- tory of Troy Smith's obligations and financial status, accepted the loan.

Seven hundred and nine dollars of the loan received was paid to retire a prior FHA loan and $200 was paid to the Rubber Workers' Credit Union to wipe out the balance of a debt incurred for improvements on the home. The entire loan of August 14, 1952, was promptly paid in accordance with the note.

On count 2 both Troy Smith and his brother Evander Smith were found guil- ty of making a similar false statement on December 30, 1952, in violation of the statute.

Early in December, 1952, Troy Smith had talked with Cooper, Mosteller's as- sistant, about a second loan with which to build a garage. This loan was han- dled directly by the bank. On Decem- ber 30th, Evander Smith, who was an employee of the Commercial & National Bank in a department in no way con- nected with FHA applications, went to his brother's house with an application for a loan of $1,650 arranged for with Cooper, and secured the signatures of Troy Smith and his wife. After return- ing the application to the bank Evander Smith on December 31st secured the check for $1,650 and delivered it to his brother. On December 31 Evander Smith used the proceeds of the loan to buy an automobile. He claimed that he did not know the automobile was available until that day.

The application of December 30, 1952, with the exception of the signatures, was filled out by Cooper, the assistant of Mosteller, who had been designated by Mosteller to receive applications when Mosteller himself was not there. The handwriting on the application was identified by an official of the bank in which Cooper was employed.

There is uncontradicted evidence to the effect that Troy Smith contemplated

building a garage and installing a hot water heater, as stated in the application of December 30, and then feared to proceed with the improvement because of a possible layoff. Several disinterested witnesses testified that layoffs in the Firestone plant always took place after Christmas. Mosteller and Cooper are now in the penitentiary, but neither of them was called as a witness. The fact that the government did not put them on the stand gives rise to a reasonable inference that Troy Smith's testimony as to the circumstances under which these loans were negotiated would not have been refuted by Mosteller or Cooper.

■ The motion for acquittal was properly denied, jury questions being presented on both counts. The charge of the court is claimed to be prejudicially erroneous.

Title 18, U.S.C., Section 1010, reads as follows:

"Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both."

Under this statute two basic elements of the crime are the making of a material false statement and the knowledge of the maker that the statement is false.

■ The court instructed the jury in substance as follows: that if it was convinced beyond a reasonable doubt that the defendant well knew on August 14, 1952, that the money or proceeds to be obtained from the loan would not be used for the addition of a room and the installation of an attic fan, but that it would be used for the most part in payments on other outstanding loans and personal obligations, it would be the duty of the jury to convict the defendant. This particular part of the instruction ignored the element of criminal motive and guilty mind. It took no account of the fact, undisputed, that a bank official in charge of FHA loans had told Troy Smith a loan could properly be secured under the FHA statute to pay for improvements already completed, that is, for existing debts.

■ In another part of the charge the court instructed the jury as follows:

"Briefly, with respect specifically to the loan of August 14, 1952, made the basis of the first count of the indictment, the defendant, Troy Smith, contends, among other things, that while he made this particular insured loan with the United Service & Research Corporation, signing the credit application herein to procure same, that he was, prior to making this loan, advised by an employee of the Commercial & Industrial Bank that it was his right under the Federal Housing Administration plan to borrow for structural additions and improvements on his home, even though such improvements had already been made some time prior thereto; that he believed in good faith this was true, and that while only a part of the proceeds of this loan of August 14, 1952, were applied to the closing in of a porch to get an additional room, the defendant, Troy Smith, honestly

and in good faith intended when this loan of August 14, 1952, was procured, to spend the full amount of same for the purposes stated in this application; that he did not at the time have it in his mind that the money obtained on this particular loan of twelve hundred dollars, or any part of the same, would be diverted to pay off other loans or other personal obligations.

"If, after a full consideration of the evidence in the case and the law as here given you by the Court, you find in line with the defendant Troy Smith's contentions concerning this particular loan, or entertain a reasonable doubt concerning same, or entertain a reasonable doubt concerning the Government's contentions with respect to same, it would be your duty to acquit the defendant, Troy Smith, on Count One of this indictment."

This instruction did not properly present Troy Smith's defense. He did not claim that when the loan on August 14, 1952, was procured he intended to spend the full amount for the purposes stated in the application and that he did not intend the funds received to be used to pay other loans and personal obligations. He contended that Mosteller had instructed him FHA loans could be used to pay for improvements practically completed and that he understood this to cover debts already incurred. This was Troy Smith's story of his defense, but it was not the defense stated by the court. It is error to issue instructions to the jury which assume as a fact material matters not established by the evidence. 1 Reid's Branson Instructions to Juries, 3rd ed., Section 23. The theory of the defendant must be stated clearly and completely. 53 Am.Jur., Section 540, page 432. A charge is erroneous if it ignores a defense claimed as to which there is evidence before the jury. 1 Reid's Branson Instructions to Juries, 3rd ed., Section 125; State v. Price, 83 W.Va. 71, 77, 97 S.E. 582, 5 A.L.R. 1247; Hyde v. United States,

4 Cir., 15 F.2d 816. This is a case rather closely in point, for an instruction held erroneous in the Hyde case had excluded consideration of testimony which tended to show the defendant's good faith.

The court's instruction to the jury at another point that it might consider Troy Smith's testimony as to his right under the law to apply the proceeds of an FHA loan to expenses already incurred, on the question of intent and as to whether the perpetration of a fraud was in his mind at that time, served only to confuse the jury because it was inconsistent with the specific charge above quoted. When the court gives inconsistent instructions on a material issue this violates the principle that the instructions must not mislead the jury and therefore must be consistent and harmonious. The fact that one instruction is correct does not cure the error in giving another that is inconsistent with it. 1 Reid's Branson Instructions to Juries, 3rd ed., Section 104. Each of the instructions quoted is prejudicial and requires reversal of the judgment and sentence on Count 1.

This was plain error affecting the substantial rights of the defendant Troy Smith. The appellate court may take notice on its own motion of the prejudicial error inherent in these charges. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288; Schmeller v. United States, 6 Cir., 143 F.2d 544.

In this connection the action of the jury is significant. The jury had gone out to deliberate but after some two hours it returned to the courtroom and the foreman made the following statement to the court: "One juror has wanted to put in mitigating circumstances on a guilty plea, and in at least one case, and I wanted you, if you would, to clarify possibly in his mind whether or not that could be done, and if so, the meaning of it." The court correctly answered that under the law this was not the type of case where a finding

of that nature was proper. But the court said, "if \* \* \* you desire to make some recommendation to the Court along the lines you have in mind, the Court will be glad to have such recommendations." It cautioned that the recommendation would be "only advisory" and not "binding on the Court in any way." The jury found Troy Smith under both counts "guilty, mitigating circumstances," and Evander Smith on Count 2 "guilty, mitigating circumstances." The court immediately sentenced Troy Smith to serve 18 months in the penitentiary on each count of the indictment, to run consecutively, making a total of three years, to pay a fine of $1,500 on Count 1 and $1,000 on Count 2, and to be committed until such fine was paid, and sentenced Evander Smith to 18 months on Count 2 of the indictment, to pay a fine in the amount of $2,500 and to be committed until such fine was paid.

The government contends that when the jury found both defendants guilty beyond a reasonable doubt it necessarily rejected the story of Troy Smith and his brother. This argument ignores the fact that Troy Smith's statement as to the instructions given him by Mosteller are undisputed. It is in effect corroborated by the testimony of the unit manager of the bank. It is strongly corroborated by the failure of the government to produce Mosteller and Cooper as witnesses. Moreover, the unanimous insistence of the jury upon placing the phrase "mitigating circumstances" in the finding of guilty under both counts of the indictment indicates doubt in the jury's mind. The jury did not consider that either of the defendants deserved drastic punishment and it indicated its opinion to the court in positive terms. In this connection defendants argue that the court misled the jury by its charge upon penalty and by its subsequent statements as to leniency. In the charge the court, after reading the statute, said: "That is the maximum fine, five thousand dollars. It could be some fine within the limits of

one dollar or five thousand dollars, and imprisonment of not more than two years. That is a maximum of two years. It could be some term of imprisonment thereon for one day to two years."

The government relies heavily upon Strauch v. United States, 6 Cir., 213 F.2d 805, 809, in which a majority of the court held a charge on penalty not prejudicial. In that case the evidence of guilt was "overwhelming." The defendants themselves had signed a formal financial statement which was compelling evidence of their guilt. The majority of the court in opinion upon petition for rehearing said in that case, at page 808 of 213 F.2d: "we cannot conceive that under this record this portion of the court's instructions could have influenced the jury as to conviction." We think that statements such as those made in the Strauch case and in the instant case with reference to penalty are not helpful. It is best simply to advise the jury that they have nothing to do with the penalty. Here the judge not only charged that the penalty could be as light as $1.00 and the prison sentence as short as one day, but also stated that he would be glad to receive the jury's recommendation of leniency. He added that it was usual to sentence after hearing and after full investigation, yet as soon as the jury's recommendation of leniency was received sentence was imposed and the defendants received a severe punishment. At least one member of the jury at the time of the colloquy with the court was hesitating as to his decision. We think the error was prejudicial.

The prejudicial error committed by the court's failure to charge correctly and fully on criminal intent with regard to conviction under Count 1 also was prejudicial with reference to the consideration of the loan of December 30, 1952, covered in Count 2. Evander Smith was indicted and convicted on the theory that he aided and abetted in the perpetration of the fraud charged in Count 2 against Troy Smith. The

judgment must be reversed with reference to Evander Smith as well as with reference to Troy Smith.

The convictions and sentences in each case are reversed and set aside.

The cases are remanded to the District Court for retrial, not inconsistent with this opinion.