Sam **SCHWACHTER**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 12950.

United States Court of Appeals Sixth Circuit.

Nov. 2, 1956.

A. J. Jolly, Newport, Ky., for appellant.

Henry J. Cook, U. S. Atty., John M. Kelly, Marvin Jones, Asst. U. S. Attys., Lexington, Ky., for appellee.

Before ALLEN, McALLISTER and MILLER, Circuit Judges.

SHACKELFORD MILLER, Jr., Circuit Judge.

Appellant was indicted for having sold on May 18, 1955 a stolen 1955 Cadillac automobile moving in interstate commerce from Cleveland, Ohio, to Newport, Kentucky, knowing the same to have been stolen, in violation of Section 2313, Title 18 U.S.Code. Following a trial by jury and a verdict of guilty, he received a sentence of two years in prison, from which this appeal was taken.

It was stipulated by the parties that the automobile in question was owned by Sol Leslie of Cleveland, Ohio, and was stolen from the garage in the rear of his residence by a person unknown to Leslie, between 3:30 p. m. on May 7, 1955 and 9:30 a. m. on May 8, 1955. The Government's evidence showed that on May 16, 1955 the automobile was registered in Kentucky and a license issued to one James Martin, Route 1, Burlington, Kentucky, by the clerk of Campbell County, Kentucky, in which Newport is situated, being transferred from one Joe Lippman of Brooklyn, New York. The Cadillac was observed by Albert Masterson on Masterson's parking lot in Newport, where it remained for about four days before it was purchased by Masterson. During that period of time Masterson drove it around. Appellant and a man named Nader, whom Masterson knew, contacted Masterson about buying the car. Appellant told Masterson that it was owned by James Martin, who had lost money gambling, and wanted to unload the car as quickly as he could for ready cash. The market value of the car, as computed by the Kentucky usage tax paid to the clerk upon registration in Kentucky, was $3,948.85. Appellant asked $3,500 for the car but after some five or ten minutes negotiations reduced the price to $3,200. Masterson had his attorney make an investigation about possible liens or mortgages, who after doing so reported that it was free and unencumbered.

The attorney testified that Masterson gave him the license registration and a bill of sale, notarized in blank, which bore the signature James Martin, that appellant and a man who said he was James Martin came to his office, that Martin acknowledged that he had signed the bill of sale and signed a receipt for $3,200 which the attorney had received from Masterson and gave to Martin. Masterson was not present and at no time ever saw the man referred to as James Martin.

The Notary testified that on the day before the sale at appellant's request, he notarized a bill of sale in blank without the signature of any seller on it, which appellant told him was to cover the Plymouth automobile which appellant was driving. He did not know or see a James Martin.

An agent of the F.B.I. testified that he made an effort to locate James Martin in Burlington but could find no such person or any trace of such person. The agent questioned appellant about the transaction in August 1955. Appellant denied to him that he had the bill of sale notarized or that he was present in the attorney's office when the money was paid for the car. This was contrary to the testimony of the notary and the attorney, and to some extent with the testimony of Nader, who testified for the appellant. Nader testified that he, Martin and the appellant walked together to the attorney's office, that Martin went into the office, he (Nader) waited outside, and he didn't remember whether appellant went in or waited outside.

A witness for the appellant testified that in the early part of May 1955, he was sitting in the Flamingo Club in Newport, where he had gone to see the manager in an attempt to borrow some money or dispose of his car; that a man whom he had never seen before or since, came from the back of the Club, complained of his bad luck at gambling, and asked him if he wanted to buy a 1955 Cadillac. The witness said he was not interested, but he saw the appellant who used to be in the used car business at a nearby table and referred the seller to him. The seller, who did not state his name, went over to appellant's table and

sat down and talked to him. The witness heard him ask appellant in his opening words if he knew where he could sell a 1955 Cadillac.

Nader testified that he saw the appellant sitting at a table in the Club with a man who appellant told him wanted to sell a Cadillac. The man said his name was Mr. Martin. Nader had seen him at the Club during the previous three days gambling hard and losing money. Nader suggested a sale of the car to Masterson, who was a lifelong friend of his, and he and appellant went to see Masterson about it. Masterson was interested, so Nader and appellant returned to the Club and got the key from Martin. Masterson purchased the car about two days later.

At the conclusion of the Government's evidence appellant moved for a judgment of acquittal on the ground that the Government had not proved that the car was moving in interstate commerce at the time of the sale, which motion was overruled. At the conclusion of all the evidence the motion was renewed and again overruled. In his closing argument to the jury the appellant's attorney was making the same point when the Court interrupted with the following statement: "Now, Mr. Jolly, it will not be submitted to the jury as to whether the car was moving in interstate commerce. The Court decides as a matter of fact and the jury will be so instructed that the car was in interstate commerce."

In his instructions to the jury the District Judge stated in his opening remarks that under the law a person who sells or disposes of a motor vehicle moving as a part of interstate commerce, knowing the same to have been stolen, is guilty of an offense. Thereafter, no reference was made with respect to the issue of interstate commerce. On the contrary, the District Judge stated,—"It was a stolen car and it was sold to Masterson by the defendant or through the agencies of the defendant. Now, that is the case. The defense is that this defendant did not know it was a stolen car. * * * You heard all the evidence and it will be for you to determine one thing

and only one: Did this defendant sell that car, knowing it was a stolen car." A little later the District Judge stated— "Now, the question, as I say, narrows down to what this defendant knew." He stated to the jury that the defendant denied that he knew it was a stolen car, and explained to the jury the difficulty of determining what a defendant knew, and that it was a fact for the jury to determine from all the facts and circumstances, which he briefly reviewed. He then gave the following instruction: "If you believe that on or about May 18, 1955 the defendant Schwachter in this district received, concealed, and sold the automobile in the proof described, knowing at the time that the car was a stolen car, and your belief in that respect is beyond a reasonable doubt, you ought to find him guilty. If you have a reasonable doubt of his having been proven guilty, you ought to find him not guilty." At the conclusion of the instructions, appellant took exceptions on the ground that the Court failed to submit to the jury the issue whether or not the car was in interstate commerce, which the District Judge overruled.

■■■ Appellant contends that the evidence was insufficient to take the case to the jury on the issue of whether appellant knew the car was stolen. Such knowledge may be established by circumstances as well as by direct proof. Possession of recently stolen property, when unexplained, permits an inference to be drawn that the defendant knows that the property is stolen. Brubaker v. United States, 6 Cir., 183 F.2d 894, 897–898; United States v. Bucur, 7 Cir., 194 F.2d 297, 300–301. In our opinion, the foregoing evidence, particularly that dealing with the false bill of sale, the material difference between the market value of the Cadillac and the price at which it was sold, the part played by the mystery man Martin, and the denials by appellant to the F.B.I. agent of his participation in some phases of the transaction, was sufficient to take the case to the jury and sustain the verdict on this issue. United States v. Solowitz, 7 Cir., 99 F.2d 714, 715.

**644**

■ Appellant also contends that it was prejudicial error for the District Judge to take from the jury the factual issue of whether the car was moving in interstate commerce at the time of the sale. It is recognized that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into the other state ends. The sale thereafter may be an incident to the theft and transportation and so tied up with it as to constitute the final step of a continuous unlawful scheme. McNally v. Hill, 3 Cir., 69 F.2d 38; Id., 293 U.S. 131, 135, 55 S.Ct. 24, 79 L.Ed. 238. But its character of being a part of interstate commerce does not continue indefinitely after its transportation ends. After a period of time and depending upon what is done with the car, it may no longer be correct to treat it as moving in interstate commerce. Grimsley v. United States, 5 Cir., 50 F.2d 509; Davidson v. United States, 8 Cir., 61 F.2d 250, 255. The acquisition of the car and later sale of it by a person who is in no way connected with the theft and transportation may be under such circumstances as to terminate its interstate character. It is a question of fact under the surrounding circumstances in each particular case. Being a question of fact it is for the jury to determine. Parsons v. United States, 5 Cir., 188 F.2d 878; United States v. Gollin, 3 Cir., 166 F.2d 123, certiorari denied 333 U.S. 875, 68 S. Ct. 905, 92 L.Ed. 1151; Seefeldt v. United States, 10 Cir., 183 F.2d 713, 715.

■■ The rule is settled that in a criminal case the judge may not direct a verdict of guilty no matter how conclusive the evidence. United Brotherhood of Carpenters and Joiners of America v. United States, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973. It is necessary that the Government prove to the jury beyond a reasonable doubt every essential element of the offense charged. Christoffel v. United States, 338 U.S. 84, 89, 69 S.Ct. 1447, 93 L.Ed. 1826; Boatright v. United States, 8 Cir., 105 F.2d 737, 740. This includes the fact in this case that the car was a part of interstate commerce when the defendant sold it. Wolf v.

United States, 7 Cir., 36 F.2d 450, 451. The trial judge may not direct the jury to find a controverted material fact against the defendant. Konda v. United States, 7 Cir., 166 F. 91.

There are some decisions which hold that this rule is not violated when the trial judge in his instructions assumes or states a fact as having been established where the fact is not made an issue by the defendant and is shown beyond controversy by the evidence. United States v. Mura, 2 Cir., 191 F.2d 886; Nordgren v. United States, 9 Cir., 181 F.2d 718, 721; United States v. Jonikas, 7 Cir., 197 F.2d 675, 679; Wellman v. United States, 6 Cir., 297 F. 925, 932. In such cases, the error, if any, is not prejudicial. United States v. Rainone, 2 Cir., 192 F.2d 860, 861; Neeper v. United States, 8 Cir., 93 F.2d 409, 411.

■ But the general rule is settled that the trial judge in a criminal case can not weigh the evidence or judge the credibility of the witnesses and take from the jury a controverted question of material fact, no matter how strongly he may be of the opinion that the evidence has established the fact beyond a reasonable doubt. United States v. Gollin, supra, 3 Cir., 166 F.2d 123, 126, certiorari denied 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151; Sullivan v. United States, 85 U.S.App.D.C. 409, 178 F.2d 723, 725; Konda v. United States, supra, 7 Cir., 166 F. 91, 93; United Brotherhood of Carpenters and Joiners of America v. United States, supra, 330 U.S. 395, 408, 67 S.Ct. 775, 91 L.Ed. 973. See Smith v. United States, 6 Cir., 230 F.2d 935, 939.

■ In the present case appellant strongly contested the Government's claim that the car was moving in interstate commerce at the time of the sale. Under his plea of not guilty it was one of his defenses, which he was entitled to have submitted to the jury. Smith v. United States, supra, 6 Cir., 230 F.2d 935, 939. In our opinion, it was prejudicial error for the District Judge to decline to do so. Wolf v. United States, supra, 7 Cir., 36 F.2d 450, 452; David-

son v. United States, supra, 8 Cir., 61 F.2d 250; McAdams v. United States, 8 Cir., 74 F.2d 37, 39.

The judgment is reversed and the case remanded to the District Court for a new trial.