John David **POWELL**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 26229.

United States Court of Appeals
Fifth Circuit.

April 3, 1969.

Anthony S. Battaglia, Howard P. Ross, Parker, Battaglia & Ross, St. Petersburg, Fla., for appellant.

Edward F. Boardman, U. S. Atty., Robert B. McGowan, Asst. U. S. Atty., Tampa, Fla., for appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

■ Appellant, John David Powell, was charged and convicted of receiving and concealing a stolen motor vehicle in interstate commerce in violation of the Dyer Act. 18 U.S.C.A. § 2313.[1] On this appeal Powell assigns two principal errors as grounds for reversal: 1) the failure of the trial court to grant his motion for acquittal at the close of the government's case, and 2) the erroneous and prejudicial admission into evidence of testimony relating to a car theft ring.[2]

With respect to the motion for acquittal, Powell argues there was insufficient evidence for the jury on two essential elements of his offense: 1) the interstate character of the automobile which he purchased, and 2) his knowledge that the car was in fact stolen property. On the first point Powell contends that the car was no longer in interstate commerce when he acquired it because it had been at rest for more than a month within the state of Florida prior to his purchase, and because there was an intervening sale and purchase of the car prior to his own acquisition. On the second point he argues that the circumstantial evidence of knowledge introduced by the government was insufficient to exclude every reasonable hypothesis except guilt.

■■ We turn first to the issue of interstate transportation. In this regard we note that whether or not stolen property is in interstate commerce, or has come to rest within a state and lost its interstate character is one of fact for the jury. Schwachter v. United States, 6 Cir. 1956, 237 F.2d 640; Pilgrim v. United States, 5 Cir. 1959, 266 F.2d 486; Parsons v. United States, 5 Cir. 1951, 188 F.2d 878. Its verdict on this, as well as all other factual issues, must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it. Glasser v. United States, 1941, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680, 704.

The facts in the present case show that the vehicle in question was stolen on November 1, 1965, at Atlanta, Georgia, and transported to an automobile body shop in St. Petersburg, Florida, where it remained for a month or more prior to appellant's purchase. During the month that it was in St. Petersburg, the car was in the possession at all times of individuals who were part of an interstate car theft ring, and who intended to recondition the car for sale. In anticipation of such a sale, the car remained concealed in the body shop while members of the ring waited for appropriate license plates, vehicle identification tags and ownership papers. When it became apparent, however, that the appropriate tags, plates and false title documents could not easily be obtained,[3] the car was sold to appellant Powell who offered to buy it without any evidence of title or identification. The sale was arranged between one Robert Smith, a member of the car theft ring, and the appellant. Powell, however, did not pay his money to Smith but to Eddie Morrow because Morrow had agreed to credit Smith's account (Morrow supplied wrecked cars to Smith) in whatever amount was paid for the car. Since the arrangement was acceptable to Smith, the sale was consummated.

---

1. 18 U.S.C.A. § 2313. Sale or receipt of stolen vehicles

   Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.

2. Under Rule 18 the Court has placed this case on the Summary Calendar for disposition without oral argument. See Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

3. The usual method of operation of the car theft ring involved the removal of license plates and identification tags from wrecked cars and the placing of them on the stolen vehicles. In the present instance an appropriate wrecked car had not been found.

On these facts Powell argues that a jury could not have found that the vehicle he purchased was still in interstate commerce. He contends that the delay in the body shop and the intervening presence of Morrow terminated the vehicle's interstate character. We have carefully considered both of these contentions and find them without merit.

We begin with the fact that there are no hard and fast rules for determining when an interstate journey has come to an end, or when an article that has made such a journey loses its interstate character. Each case must be decided on its own facts. Schwachter v. United States, 6 Cir. 1956, 237 F.2d 640, 644. Certain general principles, however, recommend themselves for consideration. As said in *Schwachter:*

"It is recognized that the interstate movement of a car does not necessarily cease when the car stops and transportation of it into the other state ends. The sale thereafter may be an incident to the theft and transportation and so tied up with it as to constitute the final step of a continuous unlawful scheme. McNally v. Hill, 3 Cir., 69 F.2d 38; Id., 293 U.S. 131, 135, 55 S.Ct. 24, 79 L.Ed. 238. But its character of being a part of interstate commerce does not continue indefinitely after its transportation ends. After a period of time and depending upon what is done with the car, it may no longer be correct to treat it as moving in interstate commerce. Grimsley v. United States, 5 Cir., 50 F.2d 509; Davidson v. United States, 8 Cir., 61 F.2d 250, 255. The acquisition of the car and later sale of it by a person who is in no way connected with the theft and transportation may be under such circumstances as to terminate its interstate character. It is a question of fact under the surrounding circumstances in each particular case." 237 F.2d at 644.

In applying these principles to the case before us, we find that the bare presence of the stolen automobile in the state of Florida for more than a month prior to the illegal sale is not in and of itself conclusive of the vehicle's interstate or intrastate character. cf. Corey v. United States, 9 Cir. 1962, 305 F.2d 232; Odom v. United States, 5 Cir. 1967, 377 F.2d 853, 856. While the time lapse between the interstate journey and the illegal sale is not without significance, equally important to the vehicle's interstate character is "what is done with the car" during that period. *Schwachter, supra.* In the present instance the retention of the stolen car at its original destination, its insulation from the commerce of Florida, and its possession by members of a car theft ring for the purpose of immediate sale permit the inference that the car was still at the time of its sale a part of a continuous unlawful scheme, McNally v. Hill, 3 Cir. 1934, 69 F.2d 38, aff'd on other grounds, 293 U.S. 131, 135, 55 S.Ct. 24, 79 L.Ed. 238. Under these circumstances we do not find that the car had come to rest within the state of Florida prior to the sale to Powell, but rather that the stay in the body shop was part of an interstate journey intended to end with the sale itself. As said in *McNally:*

"Plainly the statute contemplates a situation where the sale is an incident to something that has gone before, the 'final step' of several that have preceded it, such as theft and transportation, and when the sale is so tied up with the interstate transportation in furtherance of the scheme unlawfully to dispose of the stolen vehicle and constitutes the last step thereof, the characteristic of interstate commerce is preserved and the federal jurisdiction for trying the offense of sale is maintained." 69 F.2d at 40.

Appellant attempts to distinguish *McNally* on the grounds that the car theft ring usually sold its cars to dealers and not to individuals such as Powell, and that the car was sold without license plates and identification tags, another departure from the ring's customary practice. This distinction is without merit. A mere change in the *modus operandi* of those bent on criminal ac-

tivity does not necessarily mean that an unlawful scheme has ceased, nor is it a reliable basis for determining the reach and limits of the Dyer Act. While we have no rigid formula to determine when a Dyer Act journey ends, we are convinced that the stoppage in Florida was no diversion or deviation from the inceptively planned interstate transport. In any event, this was a question for the jury. There was ample evidence upon which the jury could have concluded that the interstate odyssey continued without significant interruption until the moment of sale.

The fact that Morrow acted as a go-between in the sale by Smith to Powell is likewise inconclusive on the issue of interstate transportation. While it is true that "the acquisition of the car and later sale of it by a person who is in no way connected with the theft and transportation may be under such circumstances as to terminate its interstate character," *Schwachter, supra,* the requisite circumstances are not present here. In the first place it is doubtful that Morrow ever bought the car from Smith before he is alleged to have sold it to Powell. It is also doubtful whether Morrow ever had the car in his possession. But even assuming both facts for the purposes of argument, Morrow's role in the sale was still entirely peripheral. His interest was not in the car, but in the debt owed him by Smith. At best Morrow was merely an agent or broker for Smith negotiating the sale on his behalf and accepting payment which was immediately credited to Smith's account. Under these circumstances the jury was justified in disregarding the role of Morrow and in viewing the sale as a transaction between Smith and Powell. The jury was then free to decide that the car's interstate journey had not come to an end at the time of sale.

The jury was also in possession of sufficient evidence from which to infer Powell's knowledge that the car in question was stolen property. The evidence indicated that the purchase price of the car was low, that the car had no identification or ownership papers at the time of sale, that Powell acquired a wrecked car and transferred its plates and identification tags to his new purchase, and that immediately after the purchase Powell had the car repainted. These facts constitute sufficient circumstantial evidence of Powell's knowledge that the car was stolen to permit the inference of guilt beyond a reasonable doubt to the exclusion of every other hypothesis. Odom v. United States, 5 Cir. 1967, 377 F.2d 853, 855; Hamilton v. United States, 5 Cir. 1962, 304 F.2d 542, 545. In view of the foregoing, the motion for acquittal was properly denied.

Appellant's assignment of error relative to admission of evidence concerning the car theft ring is also without merit. The existence of the car theft ring was relevant and material, indeed essential, to a showing that the stolen vehicle was part of a continuous, unlawful scheme and therefore still moving in interstate commerce at the time of sale. Powell was not unduly prejudiced by this evidence. Two members of the car theft ring testified that Powell had never been a member of their group and that they had only sold him the one car in question. With such unequivocal testimony before the jury, the likelihood that Powell would be implicated in the wrongdoing of others was *de minimus.* Similarly, the references made at trial to Powell's activities in repainting the car after its purchase and in acquiring plates and identification tags from another vehicle were relevant to the issue of Powell's knowledge that the car was stolen. In no sense did these references constitute evidence of unrelated crimes as appellant appears to contend. Rather the evidence he would have us excommunicate was not only relevant and material to his knowledge of the car's illicitness, it was exculpatory of any possible ring activities.

Affirmed.