**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Leland JOHNSON, Defendant-Appellant.**

**No. 27025.**

United States Court of Appeals Fifth Circuit.

July 23, 1969.

Jack W. Torbert, Gadsden, Ala., Nabors & Torbert, Gadsden, Ala., for defendant-appellant.

Macon L. Weaver, U. S. Atty., R. Macey Taylor, Melton L. Alexander, Asst. U. S. Attys., Birmingham, Ala., for plaintiff-appellee.

Before COLEMAN and SIMPSON, Circuit Judges, and MEHRTENS, District Judge.

COLEMAN, Circuit Judge:

A jury found James Leland Johnson guilty on four counts of receiving, concealing, etc., stolen motor vehicles, knowing the same to have been stolen and to have been transported in interstate commerce. The trial court imposed two years confinement sentences on each count, the sentences to be served consecutively. We affirm the convictions on Counts Two, Three, and Four. We reverse as to Count One.

### 1. Count One. The 1966 Blue Chevrolet Corvette

Joseph Haney testified that a 1966 blue Chevrolet Corvette was stolen from his automobile lot in Detroit, Michigan, in the early part of 1968. He had no notations of the serial number of the automobile, nor did he have any registration papers showing title to the motor vehicle. He testified that Michigan was a title state, but the papers on the automobile stolen from him were in the custody of an insurance company. He,

therefore, was unable to testify that the automobile stolen from him bore the same serial number as that found in the possession of James Leland Johnson. He could only say that the automobile stolen from him was similar in color, make, and model to that named in the indictment.

The prosecution sought to bridge this deficiency by the testimony of a special agent of the Federal Bureau of Investigation. This agent had the serial number and the motor number of Johnson's blue Corvette, taken from a confidential location on the frame of the vehicle. By the use of gasoline he cleaned off the numbers, rubbed fingerprint ink over them, laid over a piece of scotch tape, picked up the ink, laid it across a white piece of paper, and by that method could read the number, which was 6111619. He sent an inquiry to the computerized center operated by the F.B.I. in Washington, which immediately responded that the car had been stolen on February 29, 1968, from the Haney Sports Car Company, Inc., of Detroit, Michigan.

■ Counsel for the defendant vigorously objected to the admission of this testimony on the ground that it was hearsay. As a matter of fact, it was double hearsay. The special agent was allowed to testify as to what he had heard from the computer center and the computer center relayed to him what it had heard from others, very likely the Detroit police department. The District Judge expressed grave doubts about the admissibility of this testimony but ultimately decided "under the circumstances of the case" to admit it. The first impresssions of the District Judge were correct. This testimony was incompetent, under the hearsay rule, and should not have been admitted.

With this testimony excluded, the Government utterly failed to make a case under Count One. We had identically the same situation in Watkins v. United States [decided March 28, 1969] 409 F.2d 1382. We held, "at most the Government's proof shows that a car of common make, color, and design was sto-

len from a used car lot in Portsmouth, Virginia and that appellant was later arrested in Jacksonville, Florida in possession of a car of like make, color, and design. * * * Since Cox v. United States, 96 F.2d 41 (8th Cir., 1938), it has been well established that such evidence will not pass muster * * *". See, also, the other cases cited in *Watkins*.

■ In this case, however, we do not do as the *Watkins* court did and remand to the District Court for its determination of whether in light of any new evidence which the Government might bring forth a retrial is warranted. The prosecution had every opportunity to have obtained the title papers from the insurance company. It elected to go to trial without them, apparently relying on the thought that it could cure the defect by the testimony of the F.B.I. agent. Under these circumstances, and in view of the substantial sentences imposed under Counts Two, Three and Four, we are not disposed to authorize retrial under Count One.

Therefore, the conviction on this count is reversed, with instructions to dismiss the count.

### 2. Count Two. The 1966 Chevrolet Pick-up Truck.

The testimony showed that this vehicle was stolen May 7, 1968, from a lot in Nashville, Tennessee. When stolen, the color of the pick-up was black. It bore serial number C–1446A167646.

The special agent for the F.B.I. located this vehicle at the residence of the defendant. He observed the truck parked in the yard. He wrote down the license plate number as he drove by. The tag number was 8T–192645. He testified, over objection, that he went to the courthouse, examined the public records, and these records reflected that the tag was registered to the defendant. The registration, however, as shown by the serial number 3 C–143A125111, would be for a 1963 Chevrolet pick-up truck, rather than for a 1966 model. From this he knew that the serial num-

ber was wrong or that the license plates had been unlawfully switched. He went back to the Johnson residence. Johnson was absent. He talked to Johnson's wife and asked permission to look at the truck more closely, at the serial plate, and she gave permission. Again over objection that this constituted an illegal search, the agent further testified that he made a list of the hidden confidential serial number of this vehicle, and that the number was 6A–16746, which tallied with the number from Nashville, and which was a different number to that shown on the registration.

There being no dispute that the defendant-appellant had the truck in his possession soon after it was stolen, the sole issue as to this count is whether the agent's inspection of the hidden serial number, on the defendant's premises, without his consent, constituted an illegal search and rendered inadmissible the serial number testimony.

We have already had this issue before us, Weaver v. United States, 5 Cir., 1967, 374 F.2d 878. A local officer saw a motor vehicle in what he considered to be suspicious circumstances. The car was searched without a warrant and burglary tools were found and seized. The defendant was put in jail and booked for the possession of burglary tools. Later, an F.B.I. agent questioned the defendant, after warning him of his constitutional rights. This aroused the further suspicion of the agent. He went to the scene, where a local police officer, who had no search warrant, opened the door, allowing the F.B.I. agent an opportunity to inspect the public identification number of the car, which appears on a plastic sheet on the door post. This number tallied with a duplicate Georgia registration certificate in the possession of the defendant. Two months later, the defendant was arrested in Georgia, by local police, accompanied by an F.B.I. agent. Search and arrest warrants were served on the defendant. While Weaver was thus in custody, the agent took an impression of the confidential number of the vehicle, appearing immediately adjacent to the radiator. The confidential number did not tally with the public identification number on the door post, although both numbers should have been the same.

There was no challenge to the taking of the confidential number, since there was a search warrant, but the attack was leveled against the observation of the door post number, which would not have been visible had the local officer not opened the door. We held that evidence of the door post number came from an independent, lawful source, i.e., the papers given the agent by the defendant. We did go on to say,

"His [the agent's] subsequent checking of the number of the vehicle was mere routine. In this highly motorized age with millions of vehicles traversing the nation's highways and the mounting number of automobile thefts and related crimes, it would tax the imagination if we were to consider under these circumstances that a visual inspection by an FBI agent of a car identification number constituted a search, much less an illegal search. The Fourth Amendment constitutional prohibition is against unreasonable searches and seizures. Cf. Cooper v. State of California, 386 U.S. 58, 87 S. Ct. 788, 17 L.Ed.2d 730 (decided February 29, 1967)."

██ The authorities from other jurisdictions are in conflict. The Tenth Circuit holds that such an inspection, without a warrant, is an invalid search, Simpson v. United States, 10 Cir., 1965, 346 F.2d 291. The Sixth and Ninth Circuits hold to the contrary. See United States v. Graham, 6 Cir., 1968, 391 F.2d 439, and Cotton v. United States, 9 Cir., 1967, 371 F.2d 385. Since these cases are duly reported and are thus readily available we shall not here indulge in a lengthy repetition of the reasoning exhibited in *Graham* and *Cotton*. Suffice it to say, we adhere to what we said in *Weaver, supra,* and agree with *Cotton* that where there is a legitimate reason to do so the mere checking of the serial number of an automobile in order more

positively to identify it is not a search within the prohibitions of the Fourth Amendment. We agree further with *Cotton* that if it is a search, it is a reasonable one, where the searcher has reliable information that an automobile of like kind and description has been stolen. The Sixth Circuit in the *Graham* case relied heavily upon the *Cotton* case.

■ We, therefore, hold that the inspection of the pick-up truck in Johnson's possession was not a search, but if a search, was a reasonable one, and no warrant was necessary.

■ One item, however, remains. To make the inspection, the agent went upon the residential premises of the defendant, without a warrant and without his consent. The District Judge admitted the evidence on the specific ground that the wife had consented to the inspection. A search to which an individual consents meets Fourth Amendment requirements, but the right to be free from an unreasonable search is personal. The Fourth Amendment protects people, not places. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L. Ed.2d 576 (1967).

As long ago as 1930, we held that a wife is without authority to bind her absent husband by consenting to an unauthorized search, Cofer v. United States, 5 Cir., 1930, 37 F.2d 677, citing Amos v. United States, 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654. See, however, Roberts v. United States, 8 Cir., 1964, 332 F.2d 892, cert. denied 380 U.S. 980, 85 S.Ct. 1344, 14 L.Ed.2d 274, in which it was held that a wife jointly *owning* the premises and over which she had control in the absence of her husband can consent to a search of the home. But see Holzhey v. United States, 5 Cir., 1955, 223 F.2d 823. See, also, United States v. Sferas, 7 Cir., 1954, 210 F.2d 69 cert. denied, Skally v. United States, 347 U.S. 935, 74 S.Ct. 630, 98 L.Ed. 1086, to the effect that where two persons have equal rights to use or occupation of premises, either may give consent to search. To like effect, Drummond v.

United States, 8 Cir., 1965, 350 F.2d 983, cert. denied, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542.

■ Since, in our view the inspection of the automobile at most was not an unreasonable search, and since the wife, in joint use and occupation of the premises, gave her consent to the officer to remain in the yard and make the inspection his presence there was not unlawful and did not vitiate the admissibility of what he later found.

■ The appellant objected below and complains here that a true copy of the registration of the truck as observed by the agent at the courthouse was not introduced and the agent was allowed to verbally describe it in violation of the best evidence rule. This item was not proof of identity but simply served to explain the reason for the agent's subsequent inspection, which did furnish conclusive identity. This was not error under the circumstances of this case.

Therefore, the conviction on this count is affirmed.

### 3. Count Three. The 1966 Yellow Chevrolet Corvette.

This vehicle was undoubtedly in the possession of the appellant and had been stolen in March, 1968, from the Baker Motor Company, Atlanta, Georgia. There was no error in the conviction on this count, and it is affirmed.

### 4. Count Four. The 1968 Chevrolet Impala.

■ This vehicle was stolen in January, 1968, from the premises of a Chevrolet agency in DeFuniak Springs, Florida. The appellant obtained this car from John Will Hodges. There is no direct evidence that Johnson knew that it was a stolen vehicle when he obtained it from Hodges. Hodges did not specifically tell him that it was stolen. However, when Hodges offered to give him a bill of sale to the automobile, Johnson stated that "he would get his own". When later arrested on a warrant obtained by the F.B.I., the officers took

possession of a bill of sale for the Impala, signed by one Jerry T. Scott. The defendant had gone to the offices of a notary in another city, where this bill of sale was signed by an individual who was unknown to the notary. These circumstances warranted the verdict of conviction on this count.

Appellant raises the same point on the Impala that he raised on the pick-up truck in that while the Impala was in the custody of the officers they obtained the true serial number of the Impala by the same method that had been used on the pick-up truck. What we have already said as to Count Two disposes of this argument.

The conviction on Count Four is affirmed.

Accordingly, the conviction of James Leland Johnson on Count One of the indictment is reversed, with directions that the Count be dismissed.

The convictions on Count Two, Three, and Four are affirmed.