UNITED STATES of America,
Plaintiff-Appellee,

v.

Luther Dale BAKER, Defendant-
Appellant.

No. 71–1351
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1971.

Certiorari Denied March 6, 1972.
See 92 S.Ct. 1195.

---

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

James R. McAtee, Pensacola, Fla., for defendant-appellant.

William Stafford, U. S. Atty., Pensacola, Fla., for plaintiff-appellee.

Before WISDOM, COLEMAN, and SIMPSON, Circuit Judges.

WISDOM, Circuit Judge:

This case turns on the admissibility of evidence disclosing the VIN (vehicle identification number) [1] when a Government agent used a penknife to open the door of a truck to find the VIN. We affirm the judgment below.

During the night of August 4, 1969, a 1969, white Ford one-half ton pickup truck was stolen from Moyer Ford Sales in Foley, Alabama. The truck was immediately delivered to Clarence W. Messick in Pensacola, Florida. There is evidence that Messick knew that the truck was stolen. Dale Luther Baker, appellant in this Court, asked Messick to se-·cure for him a 1970 truck. Baker had recently had his 1966 Ford Fairlane stolen, according to a report he filed with the Escambia County, Florida, Sheriff's Office. On November 8, 1969, Baker bought the stolen 1969 Ford pickup truck from Messick for $500 cash but received no papers or documents of title.

On March 6, 1970, a local F.B.I. agent received a report that Baker's 1966 Ford Fairlane which had previously been reported stolen had been recovered in Alabama. The agent verified the theft report with the County Sheriff's Office and obtained Baker's address and telephone number. The F.B.I. agent telephoned Baker to request an interview with him; it was routine procedure for the F.B.I. to talk with the owner-victim of a stolen vehicle upon its recovery. Baker was reluctant to talk with the agent and asked that the interview be put off until the following day. Finally, Baker agreed to meet with the agent later that same day.

After interviewing Baker, F.B.I. Agent Landsgaard talked with Baker's ex-wife and learned that Baker had been driving a pickup truck. Landsgaard also spoke with Tina Lynch, Baker's girl-friend, who revealed the following events which had occurred earlier that day. Miss Lynch had received a call from Baker telling her that he was coming to see her. When Baker arrived, he told her that someone was coming to see him and that he did not want that person to see his truck. At Baker's request, the girl followed Baker to Barnes Supermarket. He parked the truck, and she drove him back home. Baker told her that if anyone asked where she had taken him she was to say she had taken him to see his children.

Agent Landsgaard, who had been looking for several stolen trucks of the same

---

1. The vehicle identification number appears on a removable plate, usually attached to the front left door post of a vehicle. The plate contains digits designating the manufacturer, model, year, and serial number of the vehicle.

type, went to Barnes Supermarket. After locating the truck in the parking lot, Landsgaard checked the license number with the County Sheriff's Office and learned that it was registered to a Eugene Odom of Brewton, Alabama. The truck was locked, but, by inserting his penknife in the vent-window of the truck, Landsgaard was able to open the door and obtain the vehicle identification number.[1] A check of the vehicle identification number with the National Crime Information Center in Washington, D. C. revealed that the truck had been stolen.

Baker was indicted for receiving and concealing a motor vehicle, knowing it to have been stolen, in violation of 18 U.S.C. § 2313. A jury found him guilty as charged, and he was sentenced to 18 months imprisonment.

Baker contends, first, that Agent Landsgaard's act of opening the locked truck and viewing the vehicle identification number constituted an unreasonable search and seizure in violation of his Fourth and Fourteenth Amendment rights. As a result, he argues, the district court erred in failing to grant his motion to suppress the evidence gained from that search.

This Court, within the context of the Fourth Amendment, has frequently had before it the problem of vehicle identification number checks. United States v. Johnson, 5 Cir. 1969, 413 F.2d 1396, aff'd en banc, 431 F.2d 441 (1970); United States v. Polk, 5 Cir. 1970, 433 F.2d 644; United States v. Williams, 5 Cir. 1970, 434 F.2d 681; United States v. Pearson & Johnson, 5 Cir. 1971, 448 F.2d 1207. In United States v. Johnson, *supra,* this Court sitting en banc ruled:

> [I]nspections of motor vehicles performed by police officers, who were entitled to be on the property where the vehicles were located, which in no way damaged the vehicles and were limited to determining the correct identification numbers thereof were not searches within the meaning of the Fourth Amendment; and that alternatively, if either of such inspec-

tions constituted a Fourth Amendment search, then no search warrant was necessary because such inspections were reasonable and did not violate the right of the people to be secure in their persons, houses, papers or effects.

431 F.2d at 441. *See also* United States v. Graham, 6 Cir. 1968, 391 F.2d 439; Cotton v. United States, 9 Cir. 1967, 371 F.2d 385; *contra* Simpson v. United States, 10 Cir. 1965, 346 F.2d 291. The cases have, however, explicitly avoided passing on the Fourth Amendment status of a vehicle identification number check of a locked vehicle. *See* United States v. Johnson, 5 Cir. 1970, 431 F.2d 441; United States v. Polk, 5 Cir. 1970, 433 F.2d 644, 646; Cotton v. United States, 9 Cir. 1967, 371 F.2d 385, 394. The instant appeal presents that issue. Agent Landsgaard was able to check the vehicle identification number only after opening the locked truck through prying open the vent window with a penknife and opening the door. Baker argues that, unlike the previous cases where the check of a vehicle identification number of unlocked vehicles was held not to be a "search" protected by the Fourth Amendment, this forced opening of his locked truck must surely constitute a "search". The government, on the other hand, contends that, since the agent could open an unlocked door to check the vehicle identification number he could open the locked door. This act, the government argues, was a minor departure for the identification procedure approved in *Johnson* and *Polk* and is not a "search".

We find it unnecessary to define the outer limits of the *Johnson* procedure in this case, for, assuming, but not deciding, that the check of the vehicle identification number of a locked vehicle constitutes a "search" protected by the Fourth Amendment, this search was not conducted in violation of the Fourth Amendment. We hold that the procedure involved in this case, even assuming it to be a search, was based on probable cause, and, therefore, was legal.

Agent Landsgaard became suspicious when Baker was reluctant to be interviewed about the return of his stolen automobile. The agent had been searching for stolen pickup trucks for several weeks. Landsgaard's conversation with Baker's girl-friend revealed Baker's attempt to conceal a pickup truck from the agent. Finally, a check of the license number on the truck revealed that the plates were registered to someone other than Baker. These facts gave Agent Landsgaard reliable information that the vehicle had been stolen and probable cause to enter the vehicle for the limited purpose of checking the vehicle identification number in order to identify the vehicle. *See* United States v. Johnson, 5 Cir. 1969, 413 F.2d 1396, 1400; United States v. Johnson, 5 Cir. 1970, 431 F.2d 441; United States v. Williams, 5 Cir. 1970, 434 F.2d 681, 683–684. The motion to suppress was properly denied.

■ Next, Baker contends that the trial court erred in denying his motion for judgment of acquittal based upon the fact that the vehicle in question had lost its interstate characteristic by the time Baker purchased it. An essential element of the offense proscribed by 18 U.S.C. § 2313 is that the stolen vehicle be in interstate commerce. However, as we noted in Powell v. United States, 5 Cir. 1969, 410 F.2d 710, 712, the question "whether or not stolen property is in interstate commerce, or has come to rest within a state and lost its interstate character is one of fact for the jury." Taking the view most favorable to the government, Glasser v. United States, 1941, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680, there was substantial evidence from which the jury might conclude that the truck retained its interstate character. Immediately after it was stolen the truck was delivered to Messick in Pensacola, Florida. Thereafter, until the sale to Baker, the truck was at all times in the possession of Messick, a known dealer in stolen vehicles. Despite Messick's personal use of the truck, he revealed no intention of keeping it but prepared it for sale by replacing the license plates

and affixing a Florida inspection sticker. When Baker purchased the truck, he was given no papers or other documents of title. Admittedly, Messick had the vehicle in his possession for three months. Time, however, is not conclusive but rather one of the factors to be considered in determining whether a vehicle is in interstate commerce. We cannot say, as a matter of law, that the vehicle in this case lost its interstate character. The question was for the jury, and there was substantial evidence from which the jury could conclude that the pickup truck was still in interstate commerce. *See* Powell v. United States, 5 Cir. 1969, 410 F.2d 710.

■ Finally, Baker argues that the admission of certain evidence was improper, prejudicial, and should result in reversal. Specifically, he objects to the admission of testimonial and documentary evidence about the theft of the 1966 Ford Fairlane owned by Baker. He feels that the presentation of the evidence by the government was an attempt to show that he was engaged in a scheme or artifice over the theft of the vehicle. Further, Baker urges that Messick's exercise of his privilege against self-incrimination when questioned about the theft was highly prejudicial. In short, Baker feels that the evidence concerning the theft was immaterial and prejudicial. We cannot agree. The evidence was material in at least two respects. First, the evidence about the theft of the vehicle laid the foundation for the telephone call to Baker by Agent Landsgaard about the recovery of the vehicle. Baker's reluctance to talk about the return of his stolen car in the face of news which would usually be happily received made Landsgaard suspicious, led to further investigation, and furnished some of the probable cause for the later search. Baker's reaction was also a factor which the jury might consider on the issue of substantive guilt. Second, the evidence about the theft of the 1966 Ford Fairlane was a circumstance which the jury could consider to show that Baker needed a means of

transportation when he allegedly bought the truck from Messick. We believe the evidence was material, not overly prejudicial, and properly admitted.

The judgment is affirmed.