**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ernest I. TORRENCE, a/k/a Farley Stevens, Defendant-Appellant.**

**No. 72–2271**

**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

June 14, 1973.

Rehearing Denied July 25, 1973.

Donald N. Denson, Ocala, Fla., Howard B. Pearl, Citra, Fla., for defendant-appellant.

John L. Briggs, U. S. Atty., Robert S. Yerkes, Asst. U. S. Atty., Jacksonville, Fla., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

PER CURIAM:

This is an appeal from a judgment of conviction entered on a jury verdict that Torrence twice transported a woman in interstate commerce in furtherance of a scheme to defraud her of a sum of money greater than $5,000, in violation of 18 U.S.C.A. § 2314. He raises three points on appeal: (1) that certain improper and prejudicial hearsay testimony was admitted at the trial; (2) that the dis-

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir. 1970, 431 F.2d 409, Part I.

trict court erroneously charged the jury with respect to its use of similar acts by Torrence to infer intent; and (3) that his motion for a judgment of acquittal should have been granted because the particulars charged in the indictment were not proved. We find merit in his second argument, and we reverse and remand for a new trial.

The specific acts for which Torrence was indicted concerned his amorous advances to a Houston widow. As the first major witness for the Government, she testified to the effect that after she had written him via a pen-pal club, he quickly won his way into her confidences, proposed marriage which was accepted, took her from Texas to Florida to view their future homesite, talked her into giving him her $7,000 savings "for investment," convinced her to sell her house in Texas, obtained $12,000 from the proceeds of that sale "for investment," helped her move to Florida, and got her settled in a rented house for which he paid some of the rent. She concluded her testimony by stating that the relationship soon terminated and that she had recovered only $2,000 of her money.

Torrence has not seriously contested much of the preceding evidence, but strenuously objects to the court's instruction allowing the jury to use virtually everything introduced subsequently by the Government. The remainder of the Government's evidence was introduced in an attempt to establish a similar meretricious relationship between Torrence and two other widows at or about the time of his relationship with the Government's primary witness. This attempt was singularly unsuccessful.

Both of these women admitted knowing Torrence and acknowledged paying him large sums of money. Additionally, the Ohio widow disclosed that she had taken a trip to Florida with Torrence; the Virginia widow similarly stated that Torrence had helped her move to Florida, had arranged to rent a mobile home for her, and had paid some of the rent on the home. At that point, however, the parallel with the Government's primary witness ends. Both women testified that they had never been more than mere friends with Torrence and that that friendly relationship continued to the present. The money paid to Torrence was explained as repayments of loans previously made to them by Torrence for which they were grateful. In short, each woman steadfastly maintained that she had not been the victim of any fraud perpetrated by Torrence and that he did not owe her any money.

Based on the record as briefly described above, the district court charged the jury that, if it found from other evidence that Torrence had committed the acts charged in the indictment with respect to the Government's primary witness, it could infer from other similar acts (if clearly and conclusively established) that Torrence acted willfully and with specific intent.

We are not called upon here to approve or disapprove the wording of that charge; instead Torrence argues that no such charge should have been given because there was no evidence to support it. We agree. Despite the Government's valiant efforts to establish Torrence as a man who had committed similar acts on at least two other occasions, its two witnesses, obviously offered as the "victims," consistently denied that any fraudulent scheme had been used against them. With no other evidence to even suggest Torrence's involvement with prior similar acts, the court's charge, even though an arguably correct statement of the abstract rule, see United States v. Broadway, 5 Cir. 1973, 477 F.2d 991, abstract rule, impermissibly allowed the jury to infer intent from allegedly similar acts nowhere evidenced in the record. Cf. United States v. Collier, 7 Cir. 1963, 313 F.2d 157; Smith v. United States, 6 Cir. 1956, 230 F.2d 935. This was reversible error [1] and requires a new trial.

Reversed and remanded.

---

1. The other points raised on appeal are without merit.