J-A12033-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KUNAL BAKHRU | : | |
| | : | |
| Appellant | : | No. 950 EDA 2024 |

Appeal from the Judgment of Sentence Entered January 12, 2024
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001791-2022

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:               **FILED DECEMBER 2, 2025**

Kunal Bakhru ("Bakhru") appeals from the judgment of sentence following his convictions for trafficking in individuals, simple assault, and conspiracy to commit rape of a child and related offenses.[1] Because Bakhru's challenge to the sufficiency of the evidence supporting his convictions for conspiracy—based on making his minor daughter, G.B., available for co-defendant Sukhjit Singh ("Singh") to rape in exchange for receiving money and alcohol—along with Bakhru's ***Brady*** issue,[2] are meritless, we affirm.

The trial court provided the following overview of the factual and procedural history:

---

[1] ***See*** 18 Pa.C.S.A. §§ (3011(a)(1)) (trafficking in individuals); 2701(a)(1) (simple assault); and § 903(a) (conspiracy - rape of a child (3121(c))).

[2] ***See Brady v. Maryland***, 373 U.S. 83 (1963).

. . . [In September 2021,] then 11-year-old G.B.[] left her father, . . . Bakhru's, house and went to her mother's house. [Bakhru had legal, and partial physical, custody of G.B., and had been preventing G.B.'s mother ("Mother") from seeing G.B. for nearly two years at this time.] She told [Mother] that co-defendant Sukhjit Singh [("Singh")] had sexually assaulted her. [Mother] immediately[] took G.B. to St. Christopher's Children's Hospital and the matter was reported to authorities. Based on their investigation, the Commonwealth advanced the theory at trial that [Bakhru] permitted . . . Singh to sexually abuse his child in exchange for money and alcohol and that [Bakhru] also committed sex acts against his daughter to "get her ready" for Singh. [G.B. testified Singh, *inter alia*, touched her vagina and anus with his penis on multiple occasions, touched her chest under her clothing with his hand, and tried to force her to perform oral sex on him.[3]]

* * * *

On August 23, 2023, jury trial began against . . . Bakhru on charges of attempted involuntary deviate sexual intercourse [("IDSI")] with a child, indecent assault of a child, corruption of minors, trafficking in individuals, aggravated assault, simple assault, conspiracy to rape of a child, conspiracy to attempted [IDSI] with a child, conspiracy to indecent assault of a child, and conspiracy to trafficking in individuals.[4] . . ..

* * * *

Following a four-day trial, the jury returned a verdict as follows: not guilty on rape of a child, attempted IDSI with a child,

_____

[3] G.B. later tested positive for vaginal and rectal chlamydia, which a Commonwealth expert explained is indicative of a sexual assault, given G.B.'s age; Singh later tested negative for chlamydia, but it was unknown if the negative result was a false negative, the chlamydia had cleared up on its own, or whether Singh obtained treatment anonymously.

[4] The convictions at issue herein include the following: 18 Pa.C.S.A. § 3011(a)(1) (trafficking in individuals); *id*., § 2701(a)(1) (simple assault); and 18 Pa.C.S.A. § 903(a) (conspiracy) to commit: rape (*id*., § 3121(c)); attempted IDSI (*id*., § 901 (attempt – IDSI (*id*., § 3123(b))); indecent assault (*id*., § 3126(a)(7)); and trafficking in individuals (*id*., § 3011(a)(1)).

indecent assault of a child, corruption of minors, and aggravated assault. He was found guilty of all other charges. [**See supra** n.4. Bakhru] was sentenced [i]n January [] 2024 [to an aggregate term of incarceration of 18 to 36 years. Prior to sentencing, Bakhru filed a motion for extraordinary relief asserting that the Commonwealth had committed a ***Brady*** violation by failing to disclose that Jose Rivera ("Rivera"), Mother's former boyfriend had a years-old criminal conviction for corruption of minors. Bakhru argued this was exculpatory because he was a "viable alternate suspect," who Bakhru would have argued at trial had possibly abused G.B. Mot., 1/5/24, at ¶ 16. The trial court denied the motion. **See** Order, 1/23/24.]

[Bakhru] filed a motion for post-sentence relief, which was denied.

Trial Ct. Op., 7/19/24, at 1-2 (paragraphs re-ordered for clarity; unnecessary capitalization omitted).[5] Bakhru timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Bakhru raises the following issues for our review:

1. Whether [Bakhru's] conspiracy convictions and corresponding sentences must be vacated as a matter of law as the buyer-seller relationship between the co-defendants failed to establish a "shared criminal intent" required for conspiracy?

2. Whether [Bakhru's] convictions must be vacated, and a new trial granted, as the Commonwealth failed to provide "material" evidence under ***Brady*** regarding an alternative suspect's criminal record for sexual assault?

Bakhru's Br. at viii.

---

[5] The trial court amended the sentencing order to "correct patent errors," which Bakhru does not contest. **See** Trial Ct. Op., 7/19/24 at 2 n.1.

Bakhru's first issue implicates the sufficiency of the evidence establishing his conspiracy convictions.[6] Our standard of review for sufficiency claims is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336–37 (Pa. Super. 2019) (internal citation and indentation omitted).

---

[6] As noted above, the jury convicted Bakhru for: trafficking in individuals, simple assault, and conspiracy to commit the following offenses: rape of a child; attempted IDSI with a child; indecent assault of a child, and trafficking in individuals.

- 4 -

We note initially that Bakhru does not contest that Singh committed the offenses the conspiracy to commit which Bakhru was convicted for; rather, Bakhru argues he cannot be held liable for conspiracy since the evidence was insufficient to establish that he and Singh agreed that Singh would commit these offenses. This Court has articulated the law for conspiracy liability as follows:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. *See* 18 Pa.C.S.[A.] § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.
>
> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

*Commonwealth v. Dunkins*, 229 A.3d 622, 633 (Pa. Super. 2020) (internal citation and indentation omitted). As we have explained, "a conspiracy may be inferentially established by showing the relation, conduct, or circumstances

of the parties, and the overt acts on the part of co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." ***Commonwealth v. Knox***, 417 A.2d 1192, 1193 (Pa. Super. 1980) (internal citation and quotation omitted).

Bakhru argues the evidence was insufficient to support his convictions for conspiracy. Relying primarily on federal case law including, *inter alia*, ***U.S. v. Johnson***, 592 F.3d 749 (7th Cir. 2010), Bakhru argues that a defendant cannot be convicted of conspiracy where the underlying crime involved the buying and selling of contraband, because they lack a shared criminal intent, that is, "[t]he buyer's intent is to buy; the seller's intent is to sell—and at no point do their intents align." Bakhru's Br. at 5. Bakhru elaborates this point: the parties do not possess a shared criminal intent because their "roles are inherently *non*-interchangeable [because e]ach party acts solely in his own self-interest, and neither serves as a representative of the other or of any conspiracy." ***Id***. at 7. ***See also id***. at 8 (citing ***U.S. v. Kapp***, 781 F.2d 1008, 1010 (3rd Cir. 1986)); ***id***. at 9 (quoting ***U.S. v. Moe***, 781 F.3d 1120, 1128 (9th Cir. 2015)). Bakhru reasons that if conspiracy could be found whenever there was an agreement to buy and sell contraband, every narcotics sale would constitute conspiracy. Bakhru notes that to "overcome the 'buyer-seller obstacle,' the Commonwealth must establish[, *inter alia*,] a 'joint venture' . . .." ***Id***. at 11 (discussing ***U.S. v. Maldonado***, 893 F.3d 480, 484 (7th Cir. 2018)).

The trial court considered Bakhru's argument and determined it warranted no relief:

. . . [*Johnson*] is not binding on this court nor does the case stand for the proposition that [Bakhru] claims it does. In *Johnson*, the court advised that, where a defendant is charged with having a drug distribution conspiracy, one must be careful against conflating the underlying buy-sell agreement with the drug distribution agreement that is alleged to form the basis of the conspiracy charge. The court explained that the government must offer evidence of an agreement to distribute drugs that is distinct from evidence of the agreement to complete the underlying drug deals. The court provided examples such as sales of large quantities of drugs, repeated and or standardized transactions, and a prolonged relationship between the parties. The case did not hold that a buyer and seller of drugs could never be found to be in a conspiracy, just that the facts of that case did not support the conspiracy.

[Bakhru's] suggestion that *Johnson* negates conspiracy in this case is an instance of taking words out of context at best, and complete rejection of common-sense at worst. While this case is not binding, even if it were, this court would reject [Bakhru's] argument. In the case *sub judice*, the evidence adduced at trial certainly showed an agreement between [Bakhru] and Singh to traffic G.B. in exchange for money and alcohol. **G.B. was abused sexually on a repeated basis for a period of years and [Bakhru] and Singh had a prolonged relationship of trust amongst each other, which prevented this from coming to light. Their shared criminal intent was this agreement to allow this abuse in exchange for money and goods.**

Trial Ct. Op., 7/19/24, at 3-4 (emphasis added).

Following our review, we conclude, like the trial court, that the evidence was sufficient to support Bakhru's conspiracy convictions. Initially, we note that the authority Bakhru relies on consists entirely of federal case law, which is non-binding on this Court. **See Commonwealth v. Jones**, 951 A.2d 294,

301 (Pa. 2008) (noting it is well settled that our courts are not bound by decisions of federal courts inferior to the United States Supreme Court).[7]

Additionally, even if inclined to take note of these non-binding decisions, we note that the principal case Bakhru relies on, **Johnson**—and the authority on which it relied—has been overruled. Consistent with the trial court's determination—that, in relevant part, the conspiracy was evinced by the prolonged relationship between Bakhru and Singh and the shared criminal intent that Singh would rape G.B. in exchange for compensation to Bakhru— in **United States v. Page**, 123 F.4th 851, 862 (7th Cir. 2024) (*en banc*), *cert. denied*, 145 S.Ct. 2794 (2025), the Seventh Circuit Court of Appeals, sitting *en banc*, overruled **Johnson** and concluded that "evidence of **repeated**, distribution-quantity transactions of illegal drugs between two parties, on its own, can sufficiently sustain a drug conspiracy conviction . . .." **Cf**. **Commonwealth v. Johnson**, 26 A.3d 1078, 1093 (Pa. 2011) (noting the statutory definition of conspiracy is a "**continuing course of conduct** which terminates when the crime or crimes which are its object are committed[,]" but finding the evidence insufficient for a conviction for a count of conspiracy

_____

[7] Bakhru cites one U.S. Supreme Court case, **U.S. v. Falcone**, 311 U.S. 205 (1940), in support of this claim. However, the issue there was whether parties who furnished legal supplies to others who used those supplies to an "illicit distiller" were liable for conspiracy, and the Court held the suppliers could not be because they had no knowledge of the conspiracy, even if they had knowledge of the illicit distilling operations. Accordingly, **Falcone** is inapposite to this case.

where there was a lack of record support for an "'ongoing' conspiracy" to sell drugs beyond a single transaction) (emphasis added).

We note the following evidence of the conspiracy between Bakhru and Singh. When Singh came over to Bakhru's residence, he would give Bakhru alcohol and money, after which Bakhru would leave, and Singh would assault G.B. *See* N.T., 8/23/23, at 143-44. Singh touched G.B.'s genitalia, chest, and arm. *See id*. at 134. Specifically, Singh touched the inside of her vagina with his fingers, used his whole hand to touch her chest under her clothes. *See id*. at 136-39. Singh used his penis to touch her vagina and buttocks, and his penis would go inside of both. *See id*. at 141-42. This occurred more than five times. *See id*. at 142. Singh also attempted to force G.B. to perform oral sex on him. *See id*. at 160-61. The abuse would happen on the couch, and Singh and G.B. would be partially clothed, but with their pants off. *See id*. at 145-46. G.B. recalled that in one instance, Bakhru observed from the front door Singh abusing G.B. and did nothing, but instead left the apartment. *See id*. at 147. G.B. later confronted Bakhru and asked why he had not done anything, and Bakhru responded that he needed the money. *See id*. at 148-49. Singh continued to abuse G.B. in exchange for giving Bakhru alcohol and money. *See id*. at 149. Additionally, the PECO energy bill for Bakhru's apartment was in Singh's name, *see* N.T., 8/25/23, at 109, and Singh was also the renter of the apartment in which Bakhru and G.B. lived. *See id*. at 228. The foregoing shows the evidence was sufficient to prove that Bakhru

engaged in conspiracy with Singh based on their course of conduct during which Bakhru would repeatedly make G.B. available for Singh to assault in exchange for alcohol and money, which evinces their shared criminal intent that Singh would abuse G.B. *See Dunkins*, 229 A.3d at 633 (a defendant is liable for conspiracy where there is an agreement and shared criminal intent and a co-conspirator commits an overt act toward the commission of the crime); *Commonwealth v. Henderson*, 378 A.3d 393, 398-99 (Pa. Super. 1977) (affirming a conviction for conspiracy to commit rape where the appellant enticed the victim into his car and supplied marijuana to her, signaled to a co-conspirator that he could begin raping the victim, and then sat passively by while the co-conspirator raped the victim, and made suggestive comments afterward but did not personally assault her).[8]

In his second issue, Bakhru argues the Commonwealth committed a *Brady* violation, and, as such the trial court erred in denying his motion for a new trial.

Our review of a *Brady* violation ruling "presents a question of law, for which our standard of review is *de novo* and our scope of review is plenary." *Commonwealth v. Bagnall*, 235 A.3d 1075, 1084 (Pa. 2020).

_____

[8] While we decline Bakhru's invitation to consider G.B. the equivalent of an inanimate object, namely, an illegal drug, we note that, even in the case of illegal drugs, as noted above, there is authority holding that a continuing course of conduct between a buyer and seller may constitute conspiracy. *See Page*, 123 F.4th at 862 (repeated drug transactions between two parties can sustain a drug conspiracy conviction).

The law for **Brady** claims is well settled. Our Supreme Court has explained:

> In **Brady**, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. The Supreme Court subsequently held that the duty to disclose such evidence is applicable even if there has been no request by the accused, and that the duty may encompass impeachment evidence as well as directly exculpatory evidence. Furthermore, the prosecution's *Brady* obligation extends to exculpatory evidence in the files of police agencies of the same government bringing the prosecution.
>
> The prosecution's duty under **Brady** is limited as "the Constitution is not violated every time the government fails or chooses not to disclose evidence that might prove helpful to the defense. Thus, there are three necessary components that demonstrate a violation of the **Brady** strictures: the evidence was favorable to the accused, either because it is exculpatory or because it impeaches; the evidence was suppressed by the prosecution, either willfully or inadvertently; and prejudice ensued.

*Commonwealth v. Conforti*, 303 A.3d 715, 725–26 (Pa. 2023) (internal citations and quotations omitted). Regarding **Brady**'s third requirement, *i.e.*, prejudice, the Court stated:

> Under **Brady**, prejudice occurs when a defendant shows a reasonable probability that had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. In other words, the undisclosed evidence must be material to guilt or punishment.

*Id*. at 730 (internal citations and quotations omitted).

Bakhru argues the trial court erred in denying his motion for a new trial because the Commonwealth committed a **Brady** violation by failing to disclose

- 11 -

certain information about G.B.'s mother's paramour, Rivera, who had a prior conviction for performing a sex act on a minor. *See* Bakhru's Br. at 22. He argues that the Commonwealth failed to disclose that Rivera had a conviction for corruption of minors, and that, if Bakhru had known this, he would have attempted to argue at trial that Rivera was an alternate suspect who gave G.B. chlamydia and, through his assault of G.B., gave her an ability to describe sexual activities, and would negate testimony by the Commonwealth's expert about how children generally react to sexual abuse, and establish mother and G.B.'s motive to "fabricate testimony" at trial. *Id*. at 22-23; *see also id*. at 25-31.

The trial court considered Bakhru's arguments and concluded they merit no relief:

> In [Bakhru's] motion for extraordinary relief and post-sentence motion, he alleged the Commonwealth withheld evidence by redacting personal information that led to the identification of an alternate suspect. He claimed the personal information was for . . . Rivera[,] . . . [Mother's] live-in boyfriend, who had a conviction for having sexual relations with a fourteen-year-old girl. This is not ***Brady*** material. . . ..
>
> . . . There was absolutely no evidence suggesting [] Rivera had access to G.B. during the period of time described by the victim. Such lack of access is amply supported by [Mother's] testimony that [Bakhru] failed to disclose or lied about his and [G.B.'s] whereabouts, [and G.B.'s] testimony that her contact with [Mother] was at best sporadic. There was absolutely no evidence to suggest [] Rivera had contact at a time when the disease diagnosed as a result of the child's examination on the day she arrived at her mom's house, could have had access to have communicated the disease. In essence, his lack of access precluded him as a source of the disease.

Trial Ct. Op., 7/19/24, at 5-6 (citation to the record omitted).

Following our review, we conclude the trial court correctly determined there was no **Brady** violation. The record shows that the evidence was not exculpatory and has no impeachment value, nor has Bakhru demonstrated prejudice. G.B. disclosed the abuse in September 2021. **See** N.T., 8/23/23, at 116. The evidence of record shows that G.B. had not seen her mother at that time for nearly two years, and that Bakhru had had custody of G.B. since she was approximately four years old. **See id**. at 261-62. G.B.'s testimony was that Singh abused her multiple times at Bakhru's residence. There was no uncertainty about the identity of G.B.'s abuser (Singh), nor the location (Bakhru's residence). And there is no evidence Rivera had access to G.B. at this time, notwithstanding Bakhru's bald assertion (without citation to the record) to the contrary. G.B. expressly stated that before fleeing to Mother from Bakhru and Singh, she had never met Rivera. **See id**. at 203. Additionally, there is no evidence that Rivera had chlamydia, which Bakhru concedes. **See** Bakhru's Br. at 29 (noting Rivera had not been tested for chlamydia). In the absence of any evidence that Rivera had access to G.B. during the relevant time, his prior criminal record has no impeachment value for either G.B. or Mother.

Accordingly, the fact that Rivera had an approximately ten-year-old conviction for corruption of minors is simply irrelevant to Bakhru's guilt or innocence, and, accordingly, is not exculpatory. **See**, **e.g.**, **Commonwealth**

*v. Spotz*, 18 A.3d 244, 277 (Pa. 2011) (holding in an appeal from a murder conviction that the Commonwealth did not commit a *Brady* violation by withholding information that a third party was alleged to have been involved in a years-old unrelated murder, notwithstanding Spotz's argument that this information was exculpatory because it would have aided him in shifting the blame for the murder at issue to that third party); *Commonwealth v. Chambers*, 807 A.3d 872, 888 (Pa. 2002) (undisclosed evidence of "simply an irrelevant and fruitless lead" does not cause prejudice).

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/2/2025